UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

PATRICIA PINTER                                                                      PLAINTIFF

V.                                              CIVIL ACTION NO. 3:11-cv-00417-CWR-FKB

MICHAEL J. ASTRUE
Commissioner, United States Social Security Administration            DEFENDANT

REPORT AND RECOMMENDATION

This cause is before the undersigned for a report and recommendation regarding the appeal by Patricia Pinter of the Commissioner of Social Security's final decision denying Pinter's claim for supplemental security income benefits. In rendering this recommendation, the undersigned has carefully reviewed the administrative record regarding Pinter's claims, including the administrative decision, the medical records and a transcript of the hearing before the Administrative Law Judge ("ALJ"); Plaintiff's Motion for Summary Judgment (Docket No. 11) and accompanying memorandum; and Defendant's Motion for an Order Affirming the decision of the Commissioner (Docket No. 13) and accompanying memorandum, as well as Plaintiff's Reply (Docket No. 15). For the reasons discussed in this report and recommendation, the undersigned recommends that the Commissioner's decision be affirmed.

I. BACKGROUND AND HISTORY

Pinter filed for disability insurance benefits and supplemental security income on March 6, 2008, alleging a disability onset date of October 1, 2006. Docket No. 10-2, p. 12. Her claims were denied initially and on reconsideration. *Id.* Pinter requested and received a hearing, at which she testified, as did a vocational expert. *Id.* At the hearing, Pinter's attorney amended her

1

alleged onset date to December 8, 2006. Docket No. 10-2, p. 35.[1]

Utilizing the requisite five step sequential evaluation process, the Administrative Law Judge ("ALJ") determined that Pinter had severe impairments of seizures, depression/anxiety and learning disability, but that her depression was largely connected with Pinter's use of alcohol and Crystal Meth, from which Pinter had abstained for four years at the time of the hearing. Docket No. 10-2, pp. 16-17. Medical records indicate that Pinter's more recent seizures took place when she was off her seizure medication. *Id.* at 17. With respect to medication, Pinter testified that, "if I can't get them refilled, then I have a seizure." Docket No. 10-2, p. 45. The ALJ concluded that Pinter's seizures were controlled by medication and that there was no good reason for her failure to comply. *Id.* at 17. The ALJ rejected Pinter's claims that nerve damage to her right dominant extremity, post traumatic stress disorder, attention deficit/hyperactivity disorder and mental retardation were medically determinable impairments. Docket No. 10-2, pp. 14-15, 20. As with her seizures, the ALJ concluded that Pinter's depression/anxiety is well controlled with medication. *Id.* at 16.

After determining that Pinter's impairments did not meet a listed impairment, the ALJ stated:

> **After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Claimant has to avoid moderate exposure to hazards (machinery, heights, etc.) and never perform work involving climbing of ladders/ropes/scaffolds. Claimant can comprehend and remember simple instructions and carry out such tasks. She can concentrate and attend for 2-hour periods,**

---

[1] Pinter had previously collected disability from 1997 until 2003, at which time she was found to have improved from her seizures. Docket No. 10-2, p. 26.

**interact with supervisors and coworkers at a very basic level, and
adapt adequately in order to complete a normal work week
without excessive interruption from psychological based symptoms.**

Docket No. 10-2, p. 24.

The ALJ ultimately determined that Pinter is not disabled and can return to her former work:

> **The claimant is capable of performing past relevant work as a
> cashier light semi-skilled work actitivy (D.O.T. 211. 462.010), cashier
> light unskilled work activity (D.O.T. 211.462-014) and in fast food light
> unskilled work activity (D.O.T. 311.472-010). This work does not require
> the performance of work-related activities precluded by the claimant's
> residual functional capacity (20 C.F.R. 404. 1565 and 416.965).**
>
> In comparing the claimant's residual functional capacity with the physical
> and mental demands of this work, I find that the claimant is able to
> perform it as actually and generally performed.
>
> Claimant also has work of security guard officer which is light semi-
> skilled work activity (she described as sedentary)(D.O.T. 372.667-038),
> and work in chicken plant which is light unskilled work activity.
>
> Although the claimant is capable of performing past relevant work, there
> are other jobs existing in the national economy that she is also able to
> perform. Therefore, I make the following alternative findings for step
> five of the sequential evaluation process.
>
> The claimant was born on September 11, 1971 and was 35 years old,
> which is defined as a younger individual age 18-49, on the alleged
> disability onset date (20 CFR 404.1563 and 416.963). The
> claimant has a limited education and is able to communicate in
> English (20 CFR 404.1564 and 416.964). Transferability of job
> skills is not material to the determination of disability because using
> the Medical-Vocational Rules as a framework supports a finding
> that the claimant is "not disabled," whether or not the claimant has
> transferable job skills (See SSR 82-41 and CFR Part 404, Subpart P,
> Appendix 2).
>
> In the alternative, considering the claimant's age, education, work
> experience, and residual functional capacity, there are other jobs
> that exist in significant numbers in the national economy that the

claimant also can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

Docket No. 10-2, pp. 26-27.

## II. PINTER'S ARGUMENTS ON APPEAL

The first argument made by Pinter on appeal is that the jobs the ALJ concluded Pinter can perform require more than the ability to follow simple instructions. Pinter argues that the Dictionary of Occupational Titles ("DOT") describes her past relevant work as requiring a reasoning level of 2 and 3, whereas she only has a reasoning level of 1.

The Secretary, in addition to citing cases reaching the opposite conclusion of those cited by Pinter with respect to simple instructions and applicable reasoning level, cites *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000) for the proposition that the ALJ may rely on the testimony of the vocational expert ("VE"), as the ALJ did here, in situations similar to the instant one. The Court agrees. The ALJ asked the VE whether her testimony that Pinter could return to her past relevant work was consistent with the DOT, and the VE stated that it was. Docket No. 10-2, p. 59. Pinter's attorney did not further question the VE on that point. The *Carey* Court noted: "this Court has acknowledged that the DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job." *Carey*, 230 F.3d at 145. Additionally, the ALJ went a step beyond the step four analysis and concluded alternatively that at step five there were other jobs Pinter could perform.

Pinter argues on appeal that the psychologist to whom her attorney sent her found her to be mentally retarded given that her IQ was 23 points lower than the score determined by the

4

consulting psychologist. However, no mention is made of mental retardation in Pinter's childhood medical records submitted nor in any subsequent records until the records of a psychologist, Kenneth Schneider, which will be addressed *infra*. In fact, most records described Pinter's intellectual capabilities as average to low average and psychiatric hospitalization records, those from the hospitalization upon which Pinter's attorney relied to amend the onset date, specifically state "no mental retardation." Docket No. 10-7, pp. 62, 130. At the hearing Pinter's attorney asked the vocational specialist if the available jobs described could be performed by a person with an IQ lower than 82 and the vocational expert stated that they could. Docket No. 10-2, p. 61.[2]

The consultative psychologist who examined Pinter on April 24, 2008, Jan Boggs, diagnosed: "Depressive disorder NOS,"[3] "Meth-amphetamine abuse/dependence in remission" and "seizures, smoker, pain in ankle and hand." Docket No. 10-7, p. 131. The psychologist to whom Pinter's attorney referred her, Kenneth Schneider, examined her on April 8, 2010 and diagnosed: "Major Depressive Disorder, Recurrent, Severe with Psychosis"; "Posttraumatic Stress Disorder"; "Attention Deficit/Hyperactivity Disorder"; "Mild Mental Retardation"; and Seizure Disorder. Docket No. 10-8, p. 51.

While Boggs concluded in 2008 that Pinter could follow directions and perform routine tasks, Schneider determined in 2010 that Pinter was "completely unable to maintain emotional control, attend to and follow instructions, tolerate contact with the public, and is prone to act

---

[2]The records from East Mississippi State Hospital in 2006 also indicate Pinter completed the 11th grade rather than the 9th as she has reported in this case. *Id.* at p. 63.

[3]"NOS" means not otherwise specified.

with a loss of emotional control with the potential for causing violence to self or others. In addition to this, mental retardation places even further limitations on her." Docket No. 10-8, p. 51.

With respect to the conflict between the two psychologists' opinions, the ALJ stated:

> In accordance with SSR 96-2p I assign no weight to the opinions and conclusions of psychologist Schneider. Mrs. Pinter was sent to psychologist Schneider on request by her representative. I note that her entire presentation was in stark contrast to that she presented before psychologist Boggs. Psychologist Schneider's opinions and conclusions are based entirely upon a singly [sic] examination, and subjective assertions taken as truths which were never voiced to psychologist Boggs and behavioral presentation. As above fore cited [sic], the severe deterioration in claimant's cognition from 2008 is highly suspect in light of no cerebral infarct or closed head injury. At a G.A.F. of 35 she would have impairment in reality and communication and she was not noted to be responding to external stimuli. Speech was not illogical, obscure or irrelevant. She gets out of the house and associates with others. At a 35 she would require institutionalization.

Docket No. 10-2, p. 26.

The Fifth Circuit has held that this Court's job is not to reweigh the evidence, retry the issues or substitute its judgment for the Commissioner's, and that evidentiary conflicts are for the Commissioner to resolve. *See, e.g., Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Therefore, the undersigned affords the appropriate deference to the ALJ on this issue and finds that the ALJ's findings are supported by substantial evidence.

Pinter next argues that the ALJ failed to consider all her severe impairments. Specifically, Pinter argues that she has borderline intellectual functioning, which she contends was diagnosed by Dr. Boggs. It appears, however, that the borderline intellectual function diagnosis was picked up by Dr. Hudson and incorrectly attributed to Dr. Boggs by Dr. Hudson

6

when Dr. Hudson was completing a residual functional capacity assessment. Docket No. 10-8, p. 32. Pinter takes issue with the ALJ stating that she has a learning disability rather than borderline intellectual functioning or mental retardation. However, Pinter reported a learning disability, Docket No. 10-7, p. 128; Docket No. 10-8, p. 49, and the ALJ's finding is supported by substantial evidence. Dr. Hudson concluded that Pinter "can understand and remember simple instructions and carry out these tasks. She can concentrate and attend for 2-hour periods, interact with supervisors and coworkers at a very basic level, and adapt adequately in order to complete a normal work week without excessive interruption from psychologically based symptoms." Docket No. 10-8, p. 36. The ALJ adopted this determination. Docket No. 10-2, pp. 22-23.

Finally, Pinter argues that the ALJ failed to properly evaluate her credibility. The ALJ concluded that though Pinter had impairments which could reasonably be expected to cause her alleged symptoms, her statements regarding intensity, persistence and limiting effects of the symptoms were not credible to the extent they conflicted with the residual functional capacity assessment. When rejecting a claimant's complaints, an ALJ must provide reasons for doing so. *Abshire v. Bowen,* 848 F.2d 638, 642 (5th Cir. 1988). Great deference is accorded the ALJ's credibility determination. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2002). In this case, when evaluating credibility, the ALJ discussed medical evidence, Pinter's decisions regarding medication and Pinter's daily activities. Docket No. 10-2, pp. 25-27. The ALJ may discount complaints of pain based on those factors. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991).

### III. CONCLUSION

Accordingly, for the reasons stated above, the undersigned recommends that Defendant's Motion for an Order Affirming the Decision of the Commissioner be granted.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. §636; Fed. R. Civ. P. 72(b)(as amended, effective December 1, 2009); <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415, 1428-29(5th Cir. 1996).

SO ORDERED, this the 13th day of April, 2012.


                                          s/ F. Keith Ball_____
                                          UNITED STATES MAGISTRATE JUDGE